IN THE SUPREME COURT OF NORTH CAROLINA

No. 457PA20-2

Filed 14 August 2026

STATE OF NORTH CAROLINA

v.

KHALIL ABDUL FAROOK


On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 297 N.C. App. 412, 910 S.E.2d 867 (2024), affirming in part and reversing in part judgments entered on 10 October 2018 by Judge Anna Mills Wagoner and an order entered on 9 March 2023 by Judge Michael D. Duncan in Superior Court, Rowan County, and remanding in part for further proceedings. Heard in the Supreme Court on 4 November 2025.

*Jeff Jackson, Attorney General, by John C. Congleton, Special Deputy Attorney General, for the State-appellant.*

*Sarah Holladay for defendant-appellee.*

NEWBY, Chief Justice.

The issue in this case is whether the United States Supreme Court's decision in *Florida v. Nixon* generally requires the two-part test in *Strickland v. Washington* as the proper analysis for most Sixth Amendment ineffective assistance of counsel claims arising from an attorney's admission of his client's guilt to the jury without the client's knowing consent. This Court's precedent in *State v. Harbison* applied a

per se prejudice rule based upon a narrow exception recognized by the Supreme Court in *United States v. Cronic* but erroneously expanded this narrow exception beyond the facts of *Harbison* to apply in all criminal cases involving an attorney's unconsented-to concession of a client's guilt. We take this opportunity to clarify that most IAC claims are governed by *Strickland* and that *Cronic*'s exception and per se prejudice rule applies only in those circumstances in which a defendant is entirely surprised by his counsel's concession of his guilt. Because the facts of defendant's case do not fall under the *Cronic* exception, we apply *Strickland* and conclude that defendant cannot show that he was prejudiced by counsel's allegedly deficient performance. Therefore, we reverse the decision of the Court of Appeals.

On 17 June 2012, defendant's vehicle crossed the center line and collided with a motorcycle carrying Tommy and Suzette Jones, who both died as a result of the collision. A witness saw defendant get out of his car and eventually walk away from the crash. Defendant turned himself in to law enforcement several days later.

Defendant was ultimately charged with driving while impaired, felony hit and run, obtaining the status of a violent habitual felon, and two counts of second-degree murder. Before trial, defendant pled guilty to driving while license revoked.

Prior to trial, defendant's counsel made admissions that:

> defendant was operating [the vehicle in question] on the date of the offense; [t]hat the vehicle he was driving on the date of the offense was involved in a crash with the motorcycle occupied by Tommy Jones and Suzette Jones, resulting in their deaths; [and t]hat at the time of the offense the defendant's drivers license was in a state of

revocation as the result of a 1987 impaired driving revocation.

Defendant further stipulated that he was the driver and operator of the vehicle involved in the crash at the time of the crash and that at the time of the crash, defendant knew his license had been revoked for driving while impaired.

In a colloquy with the trial court, defendant affirmed that his counsel had defendant's permission to concede these elements of the offenses charged; that defendant understood the elements he was conceding; and that the State would not have to prove these elements beyond a reasonable doubt.

During the presentation of the State's evidence at trial, defendant further stipulated that blood evidence was found on the driver's side airbag of his vehicle and was properly processed by the State Crime Lab and that Crime Lab experts would testify that the DNA belonged to defendant. The trial court noted that defendant "sh[ook] his head, yes," as defense counsel discussed the stipulation.

Following the close of the State's evidence, defendant further stipulated that he was not at the scene of the collision when law enforcement arrived and that he did not return to the scene. The trial court conducted another colloquy with defendant, who reiterated his agreement to the pretrial stipulations and agreed that his counsel made the new stipulations with defendant's permission. Defendant further agreed that the State did not need to prove the new stipulations beyond a reasonable doubt and verified that he had no questions.

During closing arguments, defense counsel traced the admissions and

stipulations defendant had made up to that point: that defendant was driving the vehicle at the time of the crash; that his license was revoked; that his vehicle was involved in a collision; that a person or persons were killed; and that defendant had pled guilty to driving while license revoked. Counsel then told the jury that it could find the defendant "[g]uilty of second-degree murder, guilty of involuntary manslaughter, guilty of misdemeanor death and not guilty." Defense counsel stated: "We've admitted several different things. We're admitting to certain things happening. The fact that he drove his vehicle and people died. We're not here to ask you to find him not guilty." Counsel told the jury that "the most appropriate charge here – the most appropriate thing that you . . . could convict him of – we ask you to find him guilty of misdemeanor death by motor vehicle." Counsel continued: "I'm not – we're not, as a defense, not asking you to find him not guilty of anything. We're asking you to find the most appropriate, which is the lesser included in misdemeanor offenses of both of these crimes. Misdemeanor death, misdemeanor death and the misdemeanor version of hit-and-run."

The jury found defendant guilty of two counts of second-degree murder and one count of feloniously failing to remain at the scene of a crash resulting in serious injury or death. After trial, defendant pled no contest to the charge of attaining the status of a violent habitual felon. Defendant was sentenced to life without the possibility of parole on his violent habitual felon plea and each of the second-degree murder convictions, as well as twenty-nine to forty-four months of incarceration on the

conviction for leaving the scene of a crash involving death or serious injury.

Defendant appealed, contending, among other things, that his counsel provided ineffective assistance (IAC) in conceding defendant's guilt to the misdemeanor charges without defendant's consent. *State v. Farook*, 297 N.C. App. 412, 414, 910 S.E.2d 867, 872–73 (2024). The Court of Appeals cited this Court's precedent in *State v. Harbison*, 315 N.C. 175, 178–79, 337 S.E.2d 504, 506 (1985), for the proposition that a defense counsel's admission of a defendant's guilt without the defendant's consent is per se violative of the Sixth Amendment's right to counsel. *Farook*, 297 N.C. App. at 450–51, 910 S.E.2d at 894–95. The Court of Appeals determined that defense counsel conceded defendant's guilt during closing argument by asking the jury to find the defendant guilty of the lesser included misdemeanor charges and stating that the defense was "not asking [the jury] to find [defendant] not guilty of anything." *Id.* at 451–52, 910 S.E.2d at 895. The court further determined that while defendant admitted and stipulated to certain elements of the offenses, the record did not clearly indicate whether defendant consented to the admission of his guilt to the offenses as a whole. *Id.* at 453–54, 910 S.E.2d at 895–96. The court also rejected the State's argument that defendant conceded guilt to the misdemeanor death by motor vehicle offense by conceding his guilt to each element of the underlying charge, opining that "even if a defendant knowingly and voluntarily consents to every element of a criminal offense, this does not necessarily indicate the defendant was aware that conceding these elements would amount to conceding guilt

to the entire offense." *Id.* at 455, 910 S.E.2d at 897. The Court of Appeals remanded for an evidentiary hearing to determine whether defendant knowingly consented to defense counsel's admission of defendant's guilt to the misdemeanor death by motor vehicle charge. *Id.* at 456, 910 S.E.2d at 897.

The State petitioned this Court for discretionary review, raising two questions: (1) whether the Court of Appeals' application of the per se prejudice standard conflicts with jurisprudence of this Court and (2) whether *Harbison*'s per se prejudice standard survived subsequent jurisprudence. On 27 June 2025, this Court allowed discretionary review.

"Whether a defendant was denied the effective assistance of counsel is a question of law that is reviewed de novo." *State v. Nunnally*, 929 S.E.2d 548, 554 (N.C. 2026) (quoting *State v. Clark*, 380 N.C. 204, 215, 868 S.E.2d 56, 64 (2022)).

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend. VI. The United States Supreme Court, which is the final arbiter on questions of federal constitutional law, *see State v. Tirado*, 387 N.C. 104, 128–30, 911 S.E.2d 51, 69–71 (2025), has explained that "the right to counsel [guaranteed by the Sixth Amendment] is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 n.14 (1970)). The right to effective assistance of counsel is a key safeguard for

the right to a fair trial. *See id.* at 684–85, 104 S. Ct. at 2063. The United States Supreme Court has incorporated the Sixth Amendment right to counsel into the Due Process Clause of the Fourteenth Amendment, rendering it applicable to the States. *Gideon v. Wainwright*, 372 U.S. 335, 339–43, 83 S. Ct. 792, 794–96 (1963).

A criminal defendant may "claim that counsel's assistance was so defective as to require a reversal of a conviction or death sentence." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. It is the defendant's burden, however, to establish that he received IAC in violation of his Sixth Amendment rights. *United States v. Cronic*, 466 U.S. 648, 658, 104 S. Ct. 2039, 2046 (1984).

For a defendant to prevail on an IAC claim is no small feat. Generally, IAC claims are evaluated under the two-pronged test established in *Strickland*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064. Under the "deficient performance" prong,

> a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690, 104 S. Ct. at 2066. Under the "prejudice" prong,

[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. . . . The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 691, 694, 104 S. Ct. at 2066, 2068. These are difficult hurdles for a defendant

to clear. And "[u]nless a defendant makes both showings, it cannot be said that the

conviction or death sentence resulted from a breakdown in the adversary process that

renders the result unreliable." *Id.* at 687, 104 S. Ct. at 2064.

The United States Supreme Court, however, has eased defendants' burden in

some narrow instances. Specifically, the Court has recognized that there are some

"circumstances that are so likely to prejudice the accused that the cost of litigating

their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658, 104 S. Ct. at

2046. In other words, in some rare instances, the prejudice prong is presumptively

satisfied. *Cronic* provided several examples of such circumstances: when there is a

"complete denial of counsel . . . at a critical stage of [the] trial"; when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; and situations in which even competent counsel would be unable to provide effective assistance, such as when the appointment of counsel is unclear or occurs too close to the commencement of trial. *Id.* at 659–61, 104 S. Ct. at 2047–48.

In 1985, this Court diverged from this framework on certain Sixth Amendment IAC claims, holding that *Strickland* is modified when a defendant shows that his trial counsel conceded his guilt to the jury without the defendant's knowing and voluntary consent. In *State v. Harbison* the defendant proceeded at trial on a self-defense theory until his trial counsel, in closing argument, to the defendant's surprise told the jury that in counsel's opinion, the defendant should not be found innocent but should be found guilty of a lesser charge. *Harbison*, 315 N.C. at 177–78, 337 S.E.2d at 506. This Court determined that trial counsel had not provided effective assistance. *Id.* at 180–81, 337 S.E.2d at 507–08.

*Harbison* acknowledged *Strickland*, but we took for granted that trial counsel had performed deficiently and determined that trial counsel's concession of a defendant's guilt without the defendant's consent qualified for *Cronic*'s presumption of prejudice. *See id.* at 178–80, 337 S.E.2d at 506–07. We stated, "[W]hen counsel to the surprise of his client admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Id.* at 179–80, 337 S.E.2d at 507. The Court analogized a nonconsensual admission of a defendant's guilt to a guilty

plea, reasoning that an admission of the defendant's guilt without his consent had the same "practical effect . . . as if counsel had entered a plea of guilty without the client's consent" because "[w]hen counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away." *Id.* at 180, 337 S.E.2d at 507. So, instead of subjecting the defendant's IAC claim to the usual rigors of the *Strickland* analysis, this Court adopted a per se rule: "[I]neffective assistance of counsel, per se in violation of the Sixth Amendment, [is] established in *every* criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Id.* at 180, 337 S.E.2d at 507–08 (emphasis added). Later, we expanded *Harbison*'s per se prejudice rule to include a defense counsel's implied concession of a client's guilt without the client's consent. *State v. McAllister*, 375 N.C. 455, 473, 475, 847 S.E.2d 711, 722, 723 (2020).

*Harbison*, like the present case, involved only questions of Sixth Amendment federal constitutional law.[1] 315 N.C. at 178–79, 337 S.E.2d at 506–07. The Supreme

---

[1] In this case defendant's IAC claim is predicated entirely on his Sixth Amendment right to counsel. Like the Federal Constitution, the North Carolina Constitution also enshrines the right to counsel. In Article I, Section 23, the state constitution provides: "In all criminal prosecutions, every person charged with crime has the right . . . to have counsel for defense . . . ." N.C. Const. art. I, § 23. We have previously synchronized the state constitutional test for IAC claims with the federal test of *Strickland*. *See State v. Braswell*, 312 N.C. 553, 562–63, 324 S.E.2d 241, 248 (1985) ("[W]e expressly adopt the test set out in *Strickland* . . . as a uniform standard to be applied to measure ineffective assistance of counsel under the North Carolina Constitution."). We refused to apply a "less stringent rule," which we believed would "encourage convicted defendants to assert frivolous claims which would result in unwarranted trial of their counsels." *Id.* at 562, 324 S.E.2d at 248 (quoting *State v.*

Court of the United States, not this Court, is the ultimate authority on such questions—including the test for determining when an attorney's conduct constitutes IAC in violation of the Sixth Amendment. Importantly to this dispute, the Supreme Court has undermined the expansive per se rule established in *Harbison*.

In *Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551 (2004), the Supreme Court clarified that the proper analysis of IAC claims when a defendant asserts that his trial counsel conceded his guilt without his knowing, voluntary consent is the routine application of *Strickland*. In *Nixon* the defendant was charged with, among other things, first-degree murder after he tied his victim to a tree and set her on fire. *Id.* at 179–80, 125 S. Ct. at 556. The State's evidence against the defendant was "overwhelming." *Id.* at 180, 125 S. Ct. at 556. The defendant's counsel believed that "[the defendant's] guilt was not 'subject to any reasonable dispute.'" *Id.* at 180–81, 125 S. Ct. at 556.

The defendant's counsel therefore tried to arrange a plea deal for defendant that would have avoided the death penalty, but prosecutors refused. *Id.* at 180–81, 125 S. Ct. at 556–57. Faced with the prospect of a capital trial, the defendant's counsel approached the defendant with a strategy: counsel would "concede guilt, thereby preserving his credibility in urging leniency during the penalty phase." *Id.* at 181,

---

*Weaver*, 306 N.C. 629, 640, 295 S.E.2d 375, 381 (1982)). But, as noted above, defendant is proceeding only under the Sixth Amendment.

125 S. Ct. at 557. The defendant's counsel deemed this strategy "to be 'the only way to save [the defendant's] life.'" *Id.* at 186, 125 S. Ct. at 559.

The defendant's counsel explained this strategy to the defendant several times, but the defendant was "generally unresponsive" and did not approve or reject the concession strategy. *Id.* at 181, 125 S. Ct. at 557. The defendant's counsel "eventually exercised his professional judgment to pursue the concession strategy" even though the defendant had not given permission to do so. *Id.* at 181–82, 125 S. Ct. at 557.

In the guilt phase of the trial, the defendant's counsel employed his concession strategy, conceding the defendant's guilt in the opening statement but arguing that "there are going to be reasons why you [(i.e., the jury)] should recommend that [defendant's] life be spared." *Id.* at 182–83, 125 S. Ct. at 557–58. During the State's case-in-chief, the defendant's counsel cross-examined witnesses and raised objections to the admission of certain evidence. *Id.* at 183, 125 S. Ct. at 558. He also contested several components of the jury instructions. *Id.* at 183, 125 S. Ct. at 558. In closing, the defendant's counsel again conceded the defendant's guilt but forecasted that he would be asking for leniency in sentencing. *Id.* at 183, 125 S. Ct. at 558. The jury convicted the defendant of all charges. *Id.* at 183, 125 S. Ct. at 558.

At the sentencing phase of the trial, the defendant's counsel introduced mitigating evidence, including evidence of low IQ, possible brain damage, mental illness, emotional instability, previous psychiatric care, "childhood emotional troubles," and "erratic behavior in the days preceding the murder." *Id.* at 183–84, 125

S. Ct. at 558. In closing argument, the defendant's counsel asked that the defendant's life be spared in light of the mitigating evidence. *Id.* at 184, 125 S. Ct. at 558.

The jury recommended the defendant be sentenced to death. *Id.* at 184, 125 S. Ct. at 558. The trial court imposed the death penalty but "commended [defense counsel's] performance during the trial, stating that 'the tactic employed . . . was an excellent analysis of [the] reality of his case.'" *Id.* at 184, 125 S. Ct. at 559.

The Florida Supreme Court ultimately concluded, however, that the defendant's counsel had provided ineffective assistance. *Id.* at 185–86, 125 S. Ct. at 559. In doing so, the Florida Supreme Court applied a rule virtually identical to *Harbison*. Because defense counsel had conceded the defendant's guilt without permission, the Florida Supreme Court "appl[ied] . . . a presumption of deficient performance, as well as a presumption of prejudice." *Id.* at 178–79, 125 S. Ct. at 555. It reasoned that the concession "made without the defendant's express consent—however gruesome the crime and despite the strength of the evidence—automatically rank[ed] as prejudicial ineffective assistance of counsel necessitating a new trial." *Id.* at 178, 125 S. Ct. at 555. The Florida Supreme Court analogized the concession as "the 'functional equivalent of a guilty plea.'" *Id.* at 185, 125 S. Ct. at 559 (quoting *Nixon v. Singletary*, 758 So.2d 618, 624 (Fla. 2000) (per curiam)). After remanding for a hearing on the defendant's consent to the strategy, the Florida Supreme Court ultimately ordered a new trial. *Id.* at 185–86, 125 S. Ct. 559–60.

The Supreme Court of the United States issued the writ of certiorari and unanimously reversed the Florida Supreme Court's ruling.[2] *Id.* at 178–79, 125 S. Ct. at 555. It observed that "[t]he Florida court . . . did not hold . . . to the standard prescribed in *Strickland*" when it "first presumed deficient performance, then applied the presumption of prejudice" under *Cronic*. *Id.* at 189, 125 S. Ct. at 561. This stacking of presumptions absolved the defendant of his burden "to show that counsel's concession strategy was unreasonable." *Id.* at 189, 125 S. Ct. at 561–62. This was error, the Court explained, because "th[e] latter presumption [(i.e., the presumption of prejudice)] . . . is reserved for cases in which counsel fails meaningfully to oppose the prosecution's case." *Id.* at 179, 125 S. Ct. at 555. Stated positively, "[a] presumption of prejudice [was] not in order based solely on a defendant's failure to provide express consent to a tenable strategy counsel ha[d] adequately disclosed to and discussed with the defendant." *Id.* at 179, 125 S. Ct. at 555.

Instead, the United States Supreme Court clarified that *Strickland* governed the defendant's IAC claim:

> The Florida Supreme Court's erroneous equation of [the defendant's counsel's] concession strategy to a guilty plea led it to apply the wrong standard in determining whether counsel's performance ranked as ineffective assistance. The court first presumed deficient performance, then applied the presumption of prejudice that *United States v. Cronic*, 446 U.S. 648, 104 S. Ct. 2039 . . . (1984), reserved for situations in which counsel has entirely failed to function as the client's advocate. The

---

[2] Chief Justice William Rehnquist was recused. *Nixon*, 543 U.S. at 193, 125 S. Ct. at 563.

Florida court therefore did not hold [the defendant] to the standard prescribed in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 . . . (1984), which would have required [the defendant] to show that counsel's concession strategy was unreasonable. . . . [The Florida Supreme Court's] majority misunderstood *Cronic* and failed to attend to the realities of defending against a capital charge.

> *Cronic* recognized a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense. *Cronic* instructed that a presumption of prejudice would be in order in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." The Court elaborated: "[I]f counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." [S]ee *Bell v. Cone*, 535 U.S. 685, 696–97, 122 S. Ct. 1843, 1851 (2002) (for *Cronic*'s presumed prejudice standard to apply, counsel's "failure must be complete"). We illustrated just how infrequently the "surrounding circumstances [will] justify a presumption of ineffectiveness" in *Cronic* itself.

*Id.* at 189–90, 125 S. Ct. at 561–62 (citations omitted) (quoting *Cronic*, 466 U.S. at 658–59, 104 S. Ct. at 2046–47).

The United States Supreme Court went on to opine that the defense counsel's concession strategy "d[id] not rank as a 'fail[ure] to function in any meaningful sense as the Government's adversary.'" *Id.* at 190, 125 S. Ct. at 562 (quoting *Cronic*, 466 U.S. at 666, 104 S. Ct. at 2051). It suggested, however, that "such a concession in a run-of-the-mine trial *might* present a closer question." *Id.* at 190, 125 S. Ct. at 562 (emphasis added).

In sum, the Supreme Court held that the state high court erred in mechanically subsuming every instance of a defense counsel's concession of a defendant's guilt without the defendant's consent within *Cronic*'s prejudice presumption. Instead, IAC claims predicated on defense counsel's concession of guilt without consent must go through the usual rigors of *Strickland*, unless the intentionally narrow *Cronic* exception applies. *See id.* at 192, 125 S. Ct. at 563.[3] Before remanding, the Court observed: "[I]f [the defendant's] counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain." *Id.* at 192, 125 S. Ct. at 563.

Several significant observations from *Nixon* bear on the continuing viability of *Harbison*.

First, the United States Supreme Court found a flaw in the Florida Supreme Court's reasoning which is also included in this Court's decision in *Harbison*. The United States Supreme Court rejected the notion that a concession of guilt without the defendant's permission during the trial is the "functional equivalent" of entering

---

[3] Notably, since *Nixon*, the United States Supreme Court has clarified that if the defendant "adamantly object[s] to any admission of guilt" and his defense counsel concedes guilt anyway, Sixth Amendment IAC jurisprudence is not implicated; that is, the defendant's claim in that scenario is not evaluated under *Strickland-Cronic* framework. *McCoy v. Louisiana*, 584 U.S. 414, 417, 426, 138 S. Ct. 1500, 1505, 1510–11 (2018). Rather, such scenarios are treated as "[v]iolation[s] of [the] defendant's Sixth Amendment-secured autonomy" rights and "rank[ ] as error of the kind [the Supreme Court's] decisions have called 'structural'; when present, such an error is not subject to harmless-error review." *Id.* at 427, 138 S. Ct. at 1511. Instead, a new trial is automatically required as the corrective— regardless of prejudice. *Id.* at 428, 138 S. Ct. at 1511–12. The rule from *McCoy* is not implicated here, where there is no indication that defendant objected to counsel's admission of his guilt to the lesser included offenses.

a guilty plea without permission. *Nixon*, 543 U.S. at 188, 125 S. Ct. at 560–61. Although there may be some surface level similarities, the Court explained that there are significant differences between the two that should be kept in mind when conducting IAC analyses.

With an unconsented-to admission of guilt, the defendant "retain[s] the rights accorded a defendant in a criminal trial"; namely, "[t]he State [is] obliged to present during the guilt phase competent admissible evidence establishing the essential elements of the crimes," and "the defense reserve[s] the right to cross-examine witnesses . . . and [can] endeavor . . . to exclude prejudicial evidence." *Id.* at 188, 125 S. Ct. at 561. Also, the defendant's right to appeal errors at trial is not hindered. *Id.* at 188, 125 S. Ct. at 561. These opportunities are not afforded to defendants who plead guilty. *See id.* at 187, 125 S. Ct. at 560. Indeed, a guilty plea "is 'itself a conviction,'" waiving the right to a trial by jury, the protection against self-incrimination, the right to confront one's accusers, and the right to an unhindered appeal. *Id.* at 187–88, 125 S. Ct. at 560 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1711 (1969)).

The "erroneous equation" of concession strategies and guilty pleas led the Florida Supreme Court to incorrectly apply a presumption of prejudice to an IAC claim based on a counsel's concession of guilt during trial without the defendant's permission. *Id.* at 189, 125 S. Ct. at 561. This Court made the same erroneous equation in *Harbison* when we said that "[t]he practical effect [of employing a

concession strategy] is the same as if counsel had entered a plea of guilty without the client's consent." 315 N.C. at 180, 337 S.E.2d at 507. And like the Florida Supreme Court, the erroneous equation led this Court to improperly presume prejudice in all cases in which defense counsel concedes guilt without the defendant's consent.

Second, in *Nixon* the United States Supreme Court clearly contemplated that *Strickland* is the general rule to be applied in most IAC cases—even those concerning concessions of guilt without the defendant's permission. Federal courts, including the United States District Court for the Middle District of North Carolina and the United States Court of Appeals for the Fourth Circuit, have discussed *Nixon* as re-establishing *Strickland* as the proper test for evaluating IAC claims arising from trial counsel's unconsented-to admission of a defendant's guilt. *McNeill v. Polk*, 476 F.3d 206, 217 (4th Cir. 2007) ("Under *Florida v. Nixon*, trial counsel's performance cannot be constitutionally deficient based solely on his failure to seek [the defendant's] consent before admitting guilt to the jury. Instead, [the defendant] must show that counsel's decision to admit guilt was objectively unreasonable under the *Strickland* standard." (citation omitted)); *Smith v. Stein*, 982 F.3d 229, 233 (4th Cir. 2020) (noting that "*Nixon* unanimously determined that such an admission was not automatically prejudicial ineffective assistance of counsel" in a discussion of the retroactive application of *McCoy*, 584 U.S. 414, 138 S. Ct. 1500 (2018), in a noncapital case); *Roberson v. Witherspoon*, No. 20CV306, 2021 WL 723533, at *6 (M.D.N.C. Feb. 24, 2021) ("[A]s the Fourth Circuit observed [in *Smith*], *Nixon* did not view counsel's

concession of a client's guilt as structural error outside the ambit of harmlessness analysis, but rather, as an allegation regarding the ineffectiveness of counsel subject to the standards announced in *Strickland v. Washington*." (citation omitted)).[4]

Finally, this Court in *Harbison* also, like the Florida Supreme Court in *Nixon*, "applied the presumption of prejudice that *United States v. Cronic* reserved for situations in which counsel has entirely failed to function as the client's advocate." *Nixon*, 543 U.S. at 189, 125 S. Ct. at 561–62 (citation omitted). *Harbison*, however, turned what the United States Supreme Court intended to be "a narrow exception" in *Cronic* into a blanket per se rule applying to "*every* criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507–08 (emphasis added). This is at odds with *Nixon*'s clarification that the *Cronic* exception is "narrow" and applies "infrequently." *Nixon*, 543 U.S. at 190, 125 S. Ct. at 562. Indeed, the *Cronic* exception has a high threshold. For it to apply, defense counsel must "fail[ ] meaningfully to oppose the prosecution's case," "entirely fail[ ] to function as the client's advocate," "entirely fail[ ] to subject the prosecution's case to meaningful adversarial testing," or

---

[4] This Court, as well as our Court of Appeals and our lower courts, have continued to apply *Harbison* following the Supreme Court's decision in *Nixon*. *See State v. McAllister*, 375 N.C. 455, 847 S.E.2d 711 (2020), *and State v. Maready*, 205 N.C. App. 1, 9–10, 695 S.E.2d 771, 777–78 (2010). However, state lower courts' treatment of *Nixon* is not precedential for this Court and paints only half of the picture, leaving unaddressed post-*Nixon* jurisprudence by federal district and appellate courts. Furthermore, the Supreme Court of the United States is the final arbiter of federal constitutional law, and this Court is required to bring our case law into compliance with its decision on this issue.

"fail[ ] to function in any meaningful sense as the Government's adversary." *Id.* at 179, 189, 190, 125 S. Ct. at 555, 561, 562. This "failure must be complete." *Id.* at 190, 125 S. Ct. at 562 (quoting *Bell v. Cone*, 535 U.S. at 696–97, 122 S. Ct. at 1851).

On the facts of *Harbison*, the defendant's counsel did precisely what *Cronic* forbade: failed to function as his client's advocate or to meaningfully test the State's case by "expressing his personal opinion that his client should not be found innocent but should be found guilty of manslaughter," despite the defendant's contention throughout trial that he acted in self-defense. *Harbison*, 315 N.C. at 177, 337 S.E.2d at 506. This Court held that "when counsel *to the surprise of his client* admits his client's guilt, the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Id.* at 180, 337 S.E.2d at 507 (emphasis added). Although this "surprise" concession fell within the "narrow exception" of *Cronic*, *Nixon*, 543 U.S. at 190, 125 S. Ct. at 562, *Harbison* went a step further and drew every instance of a counsel's unconsented-to concession of his client's guilt under the umbrella of *Cronic*: "ineffective assistance of counsel, per se in violation of the Sixth Amendment, has been established in *every* criminal case in which the defendant's counsel admits the defendant's guilt to the jury without the defendant's consent." *Harbison*, 315 N.C. at 180, 337 S.E.2d at 507–08 (emphasis added). This broad, blanket rule cannot be maintained following *Nixon*; instead, *Harbison*'s per se prejudice rule may only apply where *Cronic* permits.

Because the United States Supreme Court is the final arbiter of federal law, we are compelled to follow that Court's guidance when considering IAC claims under the Sixth and Fourteenth Amendments. Therefore, IAC claims asserting that defense counsel conceded guilt without the defendant's knowing and voluntary permission are evaluated under both prongs of *Strickland*, unless the narrow exception recognized by *Cronic* applies.[5]

On its facts, this case does not appear to fall under the *Cronic* exception. Rather than entirely failing to oppose the State's case or to function as his client's advocate, counsel here employed a concession strategy to which defendant agreed, at least in part, as reflected by the pretrial *Harbison* admissions and the colloquies conducted by the trial court in which defendant agreed to various concessions. Because counsel discussed a strategy involving concessions with his client prior to trial and defendant was not wholly surprised by counsel's admission of his guilt, this case does not fall within the *Cronic* exception, and *Strickland* thus controls.

Applying *Strickland*, we must determine: (1) whether counsel performed deficiently by conceding defendant's guilt to the lesser included offenses of misdemeanor death by vehicle and misdemeanor hit and run without the defendant's consent, and (2) whether defendant was prejudiced by these concessions.

---

[5] Infrequently, a defense counsel's concession of guilt without the defendant's knowing and voluntary permission may amount to a complete failure to function as the defendant's advocate. On those uncommon occasions, the "narrow" *Cronic* exception may be invoked, and the prejudice prong may be presumptively satisfied.

The Court of Appeals concluded that the record did not clearly show whether defendant knowingly consented to the admission of his guilt to the misdemeanor offenses, despite defendant's admissions and stipulations to several *elements* of the misdemeanor offenses. *Farook*, 297 N.C. App. at 455–56, 910 S.E.2d at 897. The court further opined that "even if a defendant knowingly and voluntarily consents to every element of a criminal offense, this does not necessarily indicate the defendant was aware that conceding these elements would amount to conceding guilt to the entire offense." *Id.* at 455, 910 S.E.2d at 897. The State contends that the Court of Appeals erred because, under *State v. McNeill*, "[w]here . . . a defendant stipulates to the elements of an offense, defense counsel may infer consent to admit defendant's guilt of that offense." 346 N.C. 233, 238, 485 S.E.2d 284, 287 (1997). The State argues that defendant "effectively stipulated to the elements of the offense[s] of misdemeanor hit and run" and misdemeanor death by motor vehicle and therefore "his consent to a concession can be inferred."

The elements of misdemeanor death by vehicle are established by statute: (1) unintentionally causing the death of another person, (2) while the defendant was engaged in violating any State law or local ordinance governing traffic or vehicles, and (3) the offense or violation proximately caused the death. N.C.G.S. § 20-141.4(a2) (2025). In written pretrial admissions, defendant admitted "pursuant to *State v. Harbison*" that he was driving at the time of the collision and "[t]hat the vehicle he was driving on the date of the offense was involved in a crash with the motorcycle

occupied by [the victims], resulting in their deaths." Defendant further admitted "[t]hat at the time of the offense the defendant's drivers license was in a state of revocation as the result of a 1987 impaired driving revocation" and stipulated that he "knew his license was in the state of revocation for an implied consent offense, driving while impaired." However, in closing argument, defense counsel told the jury that the violation of motor vehicle law that caused the accident was driving left of center, not driving with defendant's license revoked: "You'll be given two main options on [violating state motor vehicle law]. That will be left of center or driving while license revoked. . . . [D]riving while license revoked isn't what caused the accident. Left of center is." The record does not reflect that defendant ever admitted or stipulated to driving left of center or that driving left of center caused the accident.

Section 20-166 of the North Carolina General Statutes provides that misdemeanor hit and run is a Class 1 misdemeanor.

> With regard to the charge of failure to stop immediately after a crash involving property damage in violation of N.C.[G.S.] § 20-166(c), the State must show (i) that [d]efendant was driving a vehicle, (ii) which was involved in a crash, (iii) that [d]efendant knew or reasonably should have known the car was in a crash, (iv) where property was damaged, (v) that [d]efendant failed to immediately stop at the scene of the crash, and (vi) that [d]efendant's failure to stop was intentional or willful.

*State v. Braswell*, 222 N.C. App. 176, 182, 729 S.E.2d 697, 702 (2012). As noted above, defendant admitted and stipulated before trial (1) that he was driving a vehicle at the time of the collision and (2) that the vehicle he was driving was involved in a

crash with the victims' motorcycle. During trial, defendant stipulated that his blood and DNA were found on the airbag of defendant's vehicle, permitting an inference that defendant's vehicle was damaged and that defendant knew or reasonably should have known that the vehicle was in a crash. The trial court noted that as counsel and the trial court discussed this stipulation, defendant was "shaking his head, yes." Defendant also admitted during trial "that he was not at the scene when law enforcement was there, and did not return to the scene." The trial court questioned defendant regarding this admission, and defendant verbally confirmed that counsel made this admission with defendant's permission, that the State did not need to prove that element beyond a reasonable doubt, and that defendant did not have any questions. We will leave for another day the question of whether intentionality or willfulness of the failure to stop can be inferred from defendant's conduct.

Under *Harbison*'s blanket per se prejudice rule, defense counsel's concession of these elements may have been sufficient to demonstrate ineffective assistance or, as the Court of Appeals concluded, may have required remand to determine whether the concessions were made with defendant's consent. Nonetheless, under *Strickland*, a defendant alleging IAC must also show prejudice, which this defendant cannot do as a matter of law.

Assuming *arguendo* that defendant's counsel performed deficiently in making the concessions without defendant's knowing consent, the cold record demonstrates that defendant cannot show prejudice from these admissions. As noted above,

prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

The most obvious form of prejudice defendant could show is that, but for counsel's concession, defendant would not have been convicted of felony hit and run or second-degree murder; however, defense counsel did not concede defendant's guilt to these charges, and defendant was not convicted of the charges to which counsel conceded his guilt.[6] In fact, counsel's concession of defendant's guilt to the lesser included misdemeanor offenses did not admit any elements of the charges for which defendant was convicted that defendant had not otherwise conceded. The elements of felony hit and run are established by statute.

> The driver of any vehicle who knows or reasonably should know: (1) That the vehicle which he or she is operating is involved in a crash; and (2) That the crash has resulted in serious bodily injury, . . . or death to any person; shall immediately stop the driver's vehicle at the scene of the crash. The driver shall remain with the vehicle at the scene of the crash until a law-enforcement officer completes the investigation of the crash or authorizes the driver to leave and the vehicle to be removed . . . . A willful violation of this

---

[6] The Court of Appeals cites *State v. Matthews*, in which the defendant was convicted of first-degree murder but contended that his defense counsel provided ineffective assistance by conceding his client's guilt to second-degree murder, a lesser included offense, without the defendant's consent. 358 N.C. 102, 109, 591 S.E.2d 535, 540–41 (2004). *Matthews* was decided solely on the issue of whether the defendant knew his counsel would concede his guilt to the lesser included offense, because under *Harbison*, prejudice was presumed. Because we now return ineffective assistance of counsel analysis to the ambit of *Strickland*, which requires a showing of prejudice, *Matthews* does not control.

subsection shall be punished as a Class F felony.

N.C.G.S. § 20-166(a) (2025). The only elements shared by felony hit and run and the misdemeanor offense are: (1) that the defendant was driving a vehicle which was involved in a crash; (2) that the defendant knew or reasonably should have known that the vehicle was involved in a crash; and (3) that the defendant failed to stop at the scene. Defendant admitted prior to trial that the vehicle he was driving was involved in a collision that caused the victims' deaths. In a colloquy with the trial court during trial, defendant affirmed that his counsel had his permission to admit that he was not at the scene of the collision when law enforcement arrived and that he did not return to the scene of the collision when law enforcement arrived; that the State did not need to prove these elements beyond a reasonable doubt; and that defendant had no questions about this admission. Defendant's stipulation that his blood and DNA were on the airbag of his car permits an inference that defendant knew or reasonably should have known that his vehicle was involved in a crash. Therefore, counsel's allegedly impermissible concession of defendant's guilt to misdemeanor hit and run did not impact defendant's conviction for felony hit and run.

"Second-degree murder is an unlawful killing with malice, but without premeditation and deliberation. Intent to kill is not a necessary element of second-degree murder, but there must be an intentional act sufficient to show malice." *State v. Brewer*, 328 N.C. 515, 522, 402 S.E.2d 380, 385 (1991) (citation omitted). In a similar second-degree murder case arising from a vehicle collision in which two people

died, this Court concluded that "it was necessary for the State to prove only that defendant had the intent to perform the act of driving in such a reckless manner as reflects knowledge that injury or death would likely result, thus evidencing depravity of mind." *State v. Rich*, 351 N.C. 386, 395, 527 S.E.2d 299, 304 (2000). Here the trial court's instructions to the jury described six elements for second-degree murder by vehicle: (1) defendant was driving a vehicle; (2) on a highway or street within the State; (3) the vehicle was involved in a collision while defendant was driving; (4) defendant violated the motor vehicle laws of the State; (5) defendant acted unlawfully and with malice; and (6) the victims' deaths were proximately caused by the unlawful acts of the defendant done in a malicious manner. The overlapping elements between second-degree murder and misdemeanor death by vehicle include a violation of State motor vehicle or traffic laws that proximately caused the death of another. As noted above, defendant admitted prior to trial that he was driving when his vehicle was involved in a collision, that the victims died as a result of the collision, and that defendant's drivers license was revoked at the time of the collision. Counsel conceded in his closing statement that "driving while license revoked isn't what caused the accident. Left of center is." This separate admission was not an implication of counsel's concession of defendant's guilt to the lesser included offenses and was not separately challenged on appeal. Therefore, counsel's admission of defendant's guilt to misdemeanor death by motor vehicle did not implicate defendant's second-degree murder convictions.

Because we determine as a matter of law that defendant cannot show prejudice from counsel's concession of his guilt to the lesser included offenses, we reverse the decision of the Court of Appeals remanding the case for an evidentiary hearing on defendant's IAC claim. The remaining issues addressed by the Court of Appeals are not properly before this Court and its decision as to these issues remains undisturbed.

REVERSED.

Justice BERGER concurring in result only.

I concur in result only.

There are essentially three questions concerning unauthorized concessions under federal law. First, did the defendant expressly object to the concession and counsel proceeded anyway? This will usually be apparent from the record, and if there was such an objection, structural error has occurred and prejudice is not considered. *See McCoy v. Louisiana*, 584 U.S. 414 (2018). Next, federal courts ask did "counsel entirely fail[ ] to subject the prosecution's case to meaningful adversarial testing[?]" *United States v. Cronic*, 466 U.S. 648, 659 (1984). If so, federal courts apply a presumption of prejudice when conducting the traditional *Strickland* IAC test. *See id.; Florida v. Nixon*, 543 U.S. 175, 189–90 (2004). If neither of these circumstances are present, the question is whether counsel performed deficiently and to the prejudice of the defendant. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Nixon*, 543 U.S. at 191–92 (2004).

While the majority's efforts move analysis of concession issues in the right direction toward the federal framework, they don't actually get there because *Harbison* remains. If the Court is searching for clarity, we should simply state that North Carolina follows existing federal law in this sphere and overturn *Harbison* and *McAllister* to the extent they presume prejudice from uncontested concessions because they insert a separate question often unanswerable from the record: whether

-29-

defendant knowingly consented in advance? *Harbison* created a remedy to answer this question: ex post evidentiary hearings on consent years after trial. Do these continue under the majority opinion even though such a remedy is not available under the federal model? Perhaps.

*Harbison* was grounded in federal law at the time, concluding there was a "per se violation of the Sixth Amendment." *Harbison,* 315 N.C. at 180. That decision cannot survive *Nixon* and *McCoy.* The majority all but acknowledges this in a footnote. But *Harbison* lingers.

When the record is silent as to affirmative consent or objection by a defendant to counsel's concession, *Nixon* holds that a presumption of prejudice is unwarranted. *Harbison* doesn't work in that space, and it doesn't fit within the circumstances of *McCoy* either. A defendant who objects on the record and has his or her Sixth Amendment right overridden by counsel is entitled to reversal without further inquiry. Leaving *Harbison* in place could lead a court to potentially take *McCoy* claims out of a structural error posture and place them into an ineffective assistance of counsel/consent inquiry. That's not correct.

The better result here is to look to *McCoy* when there is an express objection and *Cronic* when the complete failure to act as counsel applies. Then simply apply *Strickland's* two-part test to all other claims. Every defendant with a genuine constitutional claim would be fully protected, and those with *McCoy* claims would be even better protected than they are today. And there would be less potential for

confusion for litigants and judges.

Justice RIGGS dissenting.

The majority today narrows an important case in North Carolina's criminal law jurisprudence effectively out of existence. *State v. Harbison,* 315 N.C. 175 (1985), has been on the books for forty-one years and has been consistently utilized by our courts for over twenty years since the United States Supreme Court published *Florida v. Nixon*, 543 U.S. 175 (2004). However, today's decision renders *Harbison* superfluous. The majority on this Court continues down its path of eradicating precedent from our books with which it philosophically or politically disagrees. This is the opposite of judicial restraint and caution, and the epitome of judicial activism. Therefore, I respectfully dissent.

The majority shines a particularly bright light on its activist intentions in two particular parts of its opinion. First, the majority impliedly overturns a very recent decision from this Court, *State v. McAllister*, 375 N.C. 455 (2020), issued when it had a different political composition. The majority's author dissented in that 2020 opinion, making some of the arguments in his dissent that he makes here today.[1]

---

[1] In *McAllister*, the majority determined that statements in defense counsel's closing argument amounted to an implied admission of the defendant's guilt which, if made without the defendant's authorization, would constitute a per se violation of the defendant's right to effective assistance of counsel under *Harbison*. 375 N.C. at 475. The dissent argued that "[t]he majority's decision today limits defense counsel's ability to pursue this common strategy" of conceding in order to "enhance defense counsel's credibility" to the jury. *Id.* at 478 (Newby, J., dissenting). Like he did in his *McAllister* dissent, the author of today's majority again erroneously puts a counsel's strategy decisions ahead of a defendant's autonomy in violation of a defendant's Sixth Amendment right to counsel. *See McCoy v. Louisiana*, 584 U.S. 414, 422 (2018) ("Just as a defendant may steadfastly refuse to plead guilty in the face of overwhelming evidence against her, or reject the assistance of legal

Second, in a footnote that can only, at best, be described as dicta, but is more accurately reviewed as an inappropriate effort to deter future litigation, the majority notes (correctly) that defendant's ineffective assistance of counsel claim in this case is "predicated entirely on his Sixth Amendment right to counsel," not state constitutional grounds. *See* majority *supra* n.1. The majority then goes on to suggest that we would treat any future claims brought under Article I, Section 23 (our state constitutional right to counsel provision) in lockstep with the federal constitutional analysis. I disagree that either our state constitution or precedent requires reflexive lockstepping with *United States v. Cronic*, 466 U.S. 648 (1984), under Article I, Section 23. Our constitutional provision has a different history and role in the context of our entire state constitutional structure, so should be interpreted intentionally when the matter is properly presented, but dicta in our opinions carries absolutely no force of law. *Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs.,* 313 N.C. 230, 242 (1985) ("Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby.").

With this perspective in mind, I turn now to the proper reading of *Florida v. Nixon*, including its easy reconciliation with our long-standing precedent, and explain

---

counsel despite the defendant's own inexperience and lack of professional qualifications, so may she insist on maintaining her innocence at the guilt phase of a capital trial. These are not strategic choices about how best to *achieve* a client's objectives; they are choices about what the client's objectives in fact *are*."); *Harbison*, 315 N.C. at 180 ("This Court is cognizant of situations where the evidence is so overwhelming that a plea of guilty is the best trial strategy. However, the gravity of the consequences demands that the decision to plead guilty remain in the defendant's hands.").

why this case would be more appropriately resolved with remand for an evidentiary hearing to determine whether *Harbison* applies.

## A. Ineffective Assistance of Counsel

To establish a claim for ineffective assistance of counsel, a defendant must prove that his counsel's conduct fell below an objective standard of reasonableness. *State v. Braswell*, 312 N.C. 553, 561–62 (1985). To successfully carry that burden, the defendant must satisfy the two-part *Strickland* test by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "showing that the deficient performance prejudiced the defense" by depriving the defendant of a fair trial. *Braswell*, 312 N.C. at 562 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A defendant has established per se ineffective assistance of counsel, requiring a new trial, when "the harm is so likely and so apparent that the issue of prejudice need not be addressed." *Harbison*, 315 N.C. at 180; *see Strickland*, 466 U.S. at 692 ("In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice."); *Cronic*, 466 U.S. at 658 (observing that "[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified").

In *Harbison*, this Court announced that per se ineffective assistance of counsel occurs "when counsel to the surprise of his client admits his client's guilt . . . without

first obtaining the client's consent." 315 N.C. at 180. This includes "when counsel concedes the defendant's guilt to the offense or a lesser included offense without the defendant's consent." *State v. Berry*, 356 N.C. 490, 512 (2002) (citing *Harbison*, 315 N.C. at 180). The defendant in *Harbison* shot two people, seriously injuring one victim and fatally wounding the other. 315 N.C. at 177. Throughout the trial, the defendant "steadfastly maintained that he acted in self-defense." *Id.* While defense counsel generally argued self-defense, during closing arguments counsel expressed to the jury: "I don't feel that [the defendant] should be found innocent. I think he should do some time to think about what he has done. I think you should find him guilty of manslaughter and not first degree." *Id.* at 178. This Court stated that "[w]hen counsel admits his client's guilt without first obtaining the client's consent, the client's rights to a fair trial and to put the State to the burden of proof are completely swept away." *Id.* at 180. Such a concession of guilt is a per se violation of a defendant's constitutional right to effective assistance of counsel. *Id.*

Just as general ineffective assistance of counsel claims are questions of law reviewed de novo, *State v. Clark*, 380 N.C. 204, 215 (2022), per se ineffective assistance of counsel claims are also reviewed de novo, *State v. Moore*, 286 N.C. App. 341, 345 (2022) (citing *Harbison*, 315 N.C. at 178–81); *see also State v. Wilson*, 236 N.C. App. 472, 475–78 (2014) (reviewing the defendant's per se ineffective assistance of counsel claim de novo).

The State asks this Court to disavow or limit *Harbison* and "reserve the

application of *per se* presumptive prejudice to the rare case where the circumstances are such that actual prejudice is evident." The State asserts that cases decided after *Harbison*, particularly *Florida v. Nixon*, have raised the question of whether a per se prejudicial standard remains "properly extant." To the degree that the State asks us to overrule or limit *Harbison*, and the majority accepts the State's invitation, both misunderstand *Nixon*. On the facts of that case, the United States Supreme Court's holding in *Nixon* was not intended to repudiate *Strickland* or significantly rework how ineffective assistance of counsel claims are established. *See Nixon*, 543 U.S. at 192.

In *Nixon*, the United States Supreme Court held that it is not per se ineffective assistance of counsel when, in a death penalty case, defense counsel concedes the defendant's guilt to an offense without the defendant's explicit consent where counsel's concession appears to be a part of trial strategy that has been discussed and disclosed to the defendant, who neither consents nor objects to the strategy. *Id.* at 179, 190–92.[2] As stated in *Nixon*,

---

[2] As framed by Justice Ginsburg in the introduction of the *Nixon* opinion:

> Defense counsel undoubtedly has a duty to discuss potential strategies with the defendant. But when a defendant, informed by counsel, neither consents nor objects to the course counsel describes as the most promising means to avert a sentence of death, counsel is not automatically barred from pursuing that course. The reasonableness of counsel's performance, after consultation with the defendant yields no response, must be judged in accord with the inquiry generally applicable to ineffective-assistance-of-counsel claims: Did

> To summarize, *in a capital case*, counsel must consider in conjunction both the guilt and penalty phases in determining how best to proceed. When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and *the defendant is unresponsive*, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent. Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain.

*Id.* at 192 (emphases added). The *Nixon* Court continued, "[a]lthough such a concession *in a run-of-the-mine trial* might present a closer question, the gravity of the potential sentence in a capital trial and the proceeding's two-phase structure vitally affect counsel's strategic calculus," and "[c]ounsel therefore may reasonably decide to focus on the trial's penalty phase." *Id.* at 190–91 (emphasis added).[3] Accordingly, *Nixon* adds a gloss to the ineffective assistance of counsel analysis in certain cases—perhaps most capital cases and cases in which a defendant refuses to engage with his or her counsel after being advised on strategy—but does not require

---

counsel's representation "f[a]ll below an objective standard of reasonableness"?

*Nixon*, 543 U.S. at 178 (alteration in original) (citing and quoting *Strickland*, 466 U.S. at 688, 694). Defense counsel, Mr. Corin, concluded that the best strategy in the defendant's case was "to concede guilt, thereby preserving his credibility in urging leniency during the penalty phase." *Id.* at 181. Mr. Corin attempted to explain that strategy to the defendant at least three times, and the defendant "was generally unresponsive" and "never verbally approved or protested Corin's proposed strategy." *Id.*

[3] "*Harbison* applies only to the guilt/innocence phase of a trial" and not the sentencing phase. *State v. Walls*, 342 N.C. 1, 57 (1995); *see also State v. Al-Bayyinah*, 359 N.C. 741, 757 (2005) (stating that "the rule in *State v. Harbison* precluding defense counsel from admitting a defendant's guilt to the jury without the defendant's consent does not apply to sentencing proceedings" (citation omitted)).

significant disturbance of *Harbison*. Rather, *Nixon* contemplates a specific circumstance where the per se prejudicial standard should not be applied given that defense counsel's concession of defendant's guilt to the jury may not even be prejudicial, let alone per se prejudicial, and instead may be reasonable in a capital case where the defendant is non-communicative with counsel.[4] *Nixon* does not require this Court to dramatically change our existing jurisprudence.

At most, *Nixon* suggests that per se ineffective assistance of counsel claims may not exist in a simple binary based on whether an attorney has verbal consent. *See, e.g.*, *State v. Al-Bayyinah*, 359 N.C. 741, 757 (2005) ("The United States Supreme Court has found that whether or not a defendant expressly consented to counsel's argument was not dispositive in finding ineffective assistance." (citing *Nixon*, 543 U.S. at 192)). On one hand, in a capital case like *Nixon*, an unconsented-to concession of guilt may, under certain conditions, not squarely track the rationale for applying a per se prejudicial standard to counsel's actions and may instead constitute a reasonable trial strategy even without the defendant's verbal consent. *See Nixon*, 543 U.S. at 178–79. If those conditions are met, counsel's actions would not be a per se violation of the defendant's Sixth Amendment rights, and the customary test under *Strickland* would apply. *See id.* at 179 ("A presumption of prejudice is not in order

---

[4] It is worth acknowledging that the United States Supreme Court granted certiorari specifically "to resolve an important question of constitutional law, *i.e.*, whether counsel's failure to obtain the defendant's express consent to a strategy of conceding guilt *in a capital trial* automatically renders counsel's performance deficient." *Nixon*, 543 U.S. at 186 (emphasis added).

based solely on a defendant's failure to provide express consent to a tenable strategy counsel has adequately disclosed to and discussed with the defendant."). On the other hand, an unconsented-to concession by counsel may constitute per se ineffective assistance of counsel under *Harbison* if it totally surprises the defendant. Such surprise would still be presumptively prejudicial to the defendant's right to a fair trial.

But *Nixon* was not the end of the story: in *McCoy v. Louisiana*, 584 U.S. 414 (2018), the United States Supreme Court provided further guidance on another, albeit distinguishable, case involving defense counsel's concession of a defendant's guilt. Like in *Nixon*, defense counsel in *McCoy* was operating under circumstances in which the evidence against the defendant was overwhelming and defense counsel advised the defendant that he intended to concede defendant's guilt at the guilt phase to avoid a death sentence in the penalty phase. *McCoy*, 584 U.S. at 418–21. But, unlike in *Nixon*, the defendant in *McCoy* "intransigent[ly] and unambiguous[ly]" objected to defense counsel's strategy to concede. *Id.* at 420. The Supreme Court held that "[t]he trial court's allowance of [defense counsel]'s admission of McCoy's guilt despite McCoy's insistent objections was incompatible with the Sixth Amendment" and remanded the matter for a new trial. *Id.* at 428. The Fourth Circuit later reconciled the cases:

> In short, *McCoy* and *Nixon* leave us with a reasonably straightforward rule. If defense counsel assesses conceding guilt to a jury as the wisest path, he has two obligations: He must consult with his client, and, if the

> client engages, he may not "steer the ship the other way." *McCoy*, 584 U.S. at 424, 138 S.Ct. 1500. If the lawyer violates these rules and thus "usurp[s] control of an issue within [the defendant's] sole prerogative," the remedy is a new trial, regardless of whether prejudice can be demonstrated. *Id.* at 426-27, 138 S.Ct. 1500.

*United States v. Hashimi*, 110 F.4th 621, 629 (4th Cir. 2024) (alterations in original). Thus, *McCoy* affirms that "[v]iolation of a defendant's Sixth Amendment-secured autonomy ranks as error of the kind our decisions have called 'structural,' " and, in that circumstance, the defendant must be "accorded a new trial without any need first to show prejudice." 584 U.S. at 427–28. Importantly, the *McCoy* Court did not apply *Strickland* and reasoned that it did not need to "[b]ecause a client's autonomy, not counsel's competence [was] in issue." *Id.* at 426. To be sure, neither *Nixon* nor *McCoy* are on all fours with this case, but those cases represent the United States Supreme Court's jurisprudence since this Court decided *Harbison*.

Returning to the State's and majority's assertion that *Nixon* should shift our jurisprudence, the key circumstances that made a presumption of prejudice inappropriate in *Nixon* are not present here. Crucially, this is not a capital case. The record lacks any indication that counsel discussed using concessions as a trial strategy with Mr. Farook or that, if the concessions were a trial strategy, the strategy was reasonable even without Mr. Farook's consent.[5] Furthermore, while the

---

[5] Our lower courts have considered how *Nixon* impacts the validity of *Harbison* and have continued to apply *Harbison*. *See, e.g.*, *State v Maready*, 205 N.C. App. 1, 9–10 (2010) (considering *Nixon* and deciding not to apply it as "[t]he case before us is not a death penalty case, and the United States Supreme Court has not addressed the specific Sixth Amendment

defendant's unresponsiveness was important to *Nixon*'s holding, the record does not suggest that Mr. Farook was unresponsive. Lastly, the United States Supreme Court affirmed the potential for structural error requiring no showing of prejudice when the defense counsel undermines a defendant's autonomy to choose defense objectives. *See McCoy*, 584 U.S. at 427–28. Thus, any gloss that *Nixon* may add to evaluating ineffective assistance of counsel claims in North Carolina does not fundamentally change our approach here, and *Harbison* remains good law.

Before returning to *Harbison*, it is worth examining how other federal and state courts have dealt with alleged per se ineffective assistance of counsel claims after *Nixon*. While some federal district and appellate courts apply *Nixon* to non-capital proceedings, a vast majority recognize, as we should, that the capital nature of the case (and the human life at stake) is significant. *See, e.g.*, *Stenson v. Lambert*, 504 F.3d 873, 891 (9th Cir. 2007) (emphasizing that *Nixon* instructs that explicit consent to conceding guilt is not needed "where the evidence of guilt is overwhelming and the attorney is attempting to avoid the death penalty"); *Holder v. United States*, 721 F.3d 979, 988 (8th Cir. 2013) (acknowledging that "[t]he Court [in *Nixon*] recognized that capital cases involve specialized circumstances"); *Lockett v. Trammell*, 711 F.3d 1218, 1249 (10th Cir. 2013) (emphasizing *Nixon*'s rationale that

issue presented in the 'run-of-the-mine' case before us"); *State v. Taylor*, No. COA17-1284, slip op. at 7 n.4 (N.C. Ct. App. Dec. 18, 2018) (unpublished) (rejecting the State's argument that *Harbison* was no longer good law in light of *Nixon*). *But see State v. Legrand*, No. COA06–153, slip op. at 6–10 (N.C. Ct. App. Dec. 19, 2006) (unpublished) (incorporating *Nixon* into its analysis of the defendant's ineffective assistance of counsel claim).

"the gravity of the potential sentence in a capital trial . . . vitally affect[s] counsel's strategic calculus" (alterations in original) (quoting *Nixon*, 543 U.S. at 190–91)); *Darden v. United States*, 708 F.3d 1225, 1229 (11th Cir. 2013) ("Thus, under *Nixon, Cronic* does not apply when defense counsel strategically concedes guilt *in a capital case* in order to more credibly advance defendant's case for leniency during the penalty phase." (emphasis added)); *United States v. Roof*, 10 F.4th 314, 351 (4th Cir. 2021) (per curiam) (summarizing *Nixon*'s holding to provide that "counsel could concede commission of the crime at the guilt phase of a capital case in order to preserve credibility for the defense during the penalty phase, and that counsel could do so even though the defendant 'never verbally approved or protested [the] proposed strategy'" (alteration in original) (quoting *Nixon*, 543 U.S. at 181)); *United States v. Basham*, 789 F.3d 358, 387 (4th Cir. 2015) (highlighting *Nixon*'s holding as one applicable "[i]n the context of a capital case"); *Goodwin v. Johnson*, 632 F.3d 301, 310 (6th Cir. 2011) (characterizing *Nixon*'s holding as providing that "trial counsel's decision to concede guilt in the guilt phase of a capital trial [was] not necessarily deficient"); *Mitts v. Bagley*, 620 F.3d 650, 662 (6th Cir. 2010) (noting that *Nixon* involved a defense attorney's concession of guilt in the context of a capital trial) *rev'd per curiam on other grounds sub nom.*, *Bobby v. Mitts*, 563 U.S. 395 (2011); *Thomas v. Payne*, 960 F.3d 465, 477 (8th Cir. 2020) (noting *Nixon*'s holding as providing that it is not a presumptively-prejudicial error for counsel to concede his client's guilt during the trial's penalty phase "to persuade the trier that his client's life should be

spared" when the defendant is unresponsive to trial strategy (quoting *Nixon*, 543 U.S. at 191)); *United States v. Felicianosoto*, 934 F.3d 783, 786–87 (8th Cir. 2019) (summarizing *Nixon* as standing for the proposition that it is not automatically ineffective assistance of counsel when defense counsel concedes his client's guilt as a strategy "*to avert a sentence of death*" when the client is unresponsive to the disclosed strategy (emphasis added) (quoting *Nixon*, 543 U.S. at 178)); *Bergerud v. Falk*, No. 14-CV-02728-MSK, 2015 WL 5770946, at *11 (D. Colo. Oct. 2, 2015) ("The Court finds that *Florida* [*v. Nixon*] did not announce a rule of law applicable in non-death penalty cases.").[6]

In short, while federal courts undoubtedly vary as to how broadly to interpret *Nixon*'s holding, the overwhelming majority of federal cases understand *Nixon* as fact-bound. Thus, because *Nixon* and *Harbison* can co-exist and *Nixon* does not undermine *Harbison*, we should exercise judicial restraint and decline to overturn a foundational case that has been continuously applied in the over two decades since *Nixon* and that shapes huge swaths of criminal practice throughout our state.

---

[6] The majority relies in part on *Smith v. Stein*, 982 F.3d 229 (4th Cir. 2020) and *Roberson v. Witherspoon*, No. 20CV306, 2021 WL 723533 (M.D.N.C. Feb. 24, 2021), as support that the Fourth Circuit and the Middle District of North Carolina have utilized *Nixon* in non-capital contexts. However, both *Smith* and *Roberson* arguably only touch on *Nixon* in part rather than embrace it in full. *See Smith*, 982 F.3d at 233–35 (discussing *Nixon* in the context of whether *McCoy* was retroactively applicable on collateral review); *Roberson*, 2021 WL 723533, at *11 (finding *Nixon* distinguishable as petitioner did not contend that trial counsel ever expressly conceded petitioner's guilt). Moreover, both cases are distinguishable from Mr. Farook's case: in *Smith* the record was more complete in that it reflected that defense counsel informed the defendant of the concession strategy; in *Roberson* there was no express concession of defendant's guilt. *See Smith*, 982 F.3d at 231; *Roberson*, 2021 WL 723533, at *11.

## B. Prior to today's opinion, remand would have been appropriate because further factfinding is needed to fully assess Mr. Farook's *Harbison* error claim.

Now turning back to the *Harbison* inquiry that should have shaped this Court's analysis, the majority concludes that "[ineffective assistance of counsel] claims asserting that defense counsel conceded guilt without the defendant's knowing and voluntary permission are evaluated under both prongs of *Strickland*, unless the narrow exception recognized by *Cronic* applies." However, in applying the standard enunciated by *Harbison*, when defense counsel's statements to the jury cannot logically be interpreted as anything other than an implied concession of guilt to a charged offense, we have stated that *Harbison* error exists unless the defendant has previously consented to such a trial strategy. *McAllister*, 375 N.C. at 475–76 (emphasizing that "a finding of *Harbison* error based on an implied concession of guilt should be a rare occurrence"). Before any admissions of guilt by defense counsel, the trial court must be satisfied that the defendant gave knowing and informed consent to the concession and that the defendant was aware of the potential consequences of his decision. *See, e.g.*, *State v. Matthews*, 358 N.C. 102, 109 (2004) (requiring that, to show consent, "the facts must show, at a minimum, that defendant *knew* his counsel were going to make such a concession"); *State v. Thompson*, 359 N.C. 77, 120 (2004) (concluding no per se violation occurred where the "defendant's on-the-record consent to his counsel's argument complied with the requirements of *Harbison*"); *State v. McDowell*, 329 N.C. 363, 385–87 (1991) (concluding that the defendant properly

consented under *Harbison* where the trial court informed the defendant his authorization was required, the trial court was told counsel and defendant discussed the concessions, and the defendant was instructed to stop counsel if any concession went beyond the scope of his authorization).

Statements made by defense counsel "must be viewed in context to determine whether the statement was, in fact, a concession of defendant's guilt of a crime." *State v. Mills*, 205 N.C. App. 577, 587 (2010) (citing *State v. Hinson*, 341 N.C. 66, 78 (1995)). *Compare Matthews*, 358 N.C. at 106, 109 (holding that defense counsel committed *Harbison* error where, without advising the defendant, counsel stated to the jury, "When you look at the evidence . . . you're going to find that he's guilty of second-degree murder" (alteration in original)), *with State v. Fisher*, 318 N.C. 512, 532–33 (1986) (concluding there was no *Harbison* error when counsel conceded that the defendant had acted with malice but also "told the jury that they could find the defendant not guilty"), *and State v. Greene*, 332 N.C. 565, 571–72 (1992) (concluding there was no *Harbison* error where counsel argued that the defendant was not guilty, but, if the jury were to find the defendant guilty of any charges, it should be for involuntary manslaughter).

Despite the damage done to *Harbison* today, I reiterate that *Harbison* never held that counsel per se violates a defendant's right to effective assistance of counsel whenever the record is silent on whether the defendant explicitly or impliedly consented to concessions and whether defendant understood the consequences of

providing consent. Trial courts should, of course, continue to conduct routine and thorough *Harbison* inquiries any time defense counsel seeks to concede elements or guilt of a crime so that we rarely confront a silent record. But whether a defendant consented to a concession of guilt and understood the consequences of such a concession is a factual question.

Defense counsel, Mr. Sease, explicitly conceded Mr. Farook's guilt to misdemeanor death by motor vehicle.[7] While Mr. Sease hinted to the concession in his opening statement, saying, "This is really a case of calling something that happened—calling something one thing when it's really something else," Mr. Sease was explicit in his closing argument. Mr. Sease told the jury outright that "[w]e're not here to ask you to find him not guilty," and stated that "we're . . . not asking you to find him not guilty of anything. We're asking you to find the most appropriate, which is the lesser included in misdemeanor offenses of both of these crimes. Misdemeanor death [by motor vehicle] . . . and the misdemeanor version of hit-and-run."

---

[7] Defendant's appellate counsel also argued that defendant's trial counsel improperly conceded Mr. Farook's guilt to misdemeanor hit-and-run, and the majority addresses the hit-and-run charge. However, the Court of Appeals failed to analyze that argument and focused its holding solely on trial counsel's concession of Mr. Farook's guilt to misdemeanor death by motor vehicle. *See State v. Farook*, 297 N.C. App. 412, 454–56 (2024) (remanding for an evidentiary hearing to ascertain consent to concede "guilt to the misdemeanor death by motor vehicle charge"). As the Court of Appeals did not analyze trial counsel's alleged concession of guilt to misdemeanor hit-and-run, it was premature for this Court to review that issue. Thus, I would hold that Mr. Farook's ineffective assistance of counsel claim as it relates to trial counsel's alleged concession of Mr. Farook's guilt to misdemeanor hit-and-run remains an outstanding question.

Because Mr. Sease clearly conceded Mr. Farook's guilt to the complete crime of misdemeanor death by motor vehicle, our focus under *Harbison* should have been whether Mr. Farook consented to that concession. Because further factfinding is necessary to determine whether Mr. Farook knowingly consented to the concession before counsel made it, I would have remanded this case to the Court of Appeals for further remand to the trial court for an evidentiary hearing on that issue.

The record here reflects the piecemeal admission of certain facts and scattered *Harbison* inquiries—standing alone, this sequencing increases the likelihood that Mr. Farook, and any defendant in a similar position, would not have understood the consequences of what he agreed to admit. And more to the point, the admissions here did not cover every element of the crimes.[8]

A person commits the offense of misdemeanor death by motor vehicle if the following elements are satisfied:

> (1) The person unintentionally causes the death of another

---

[8] It is abundantly clear that a valid defense strategy can involve admitting elements of a crime without admitting ultimate guilt.

> A criminal defense attorney may concede that a defendant has engaged in bad behavior without admitting that the defendant has committed one of the crimes charged. Indeed, it may be in the defendant's best interests for his attorney to do so. Admitting to the jury that a defendant has behaved poorly can enhance defense counsel's credibility and help the jury better understand what is really at issue in a case.

*McAllister*, 375 N.C. at 478 (Newby, J., dissenting). Here, Mr. Farook and his counsel agreed to stipulate to certain facts. Without a more developed record, we cannot meaningfully determine whether Mr. Farook consented to conceding the full crime rather than mere "bad behavior."

person,

(2) The person was engaged in the violation of any State law or local ordinance applying to the operation or use of a vehicle or to the regulation of traffic, other than impaired driving . . . , and

(3) The commission of the offense in subdivision (2) of this subsection is the proximate cause of the death.

N.C.G.S. § 20-141.4(a2) (2025). My review of the record does not support that Mr. Farook conceded every element.

Mr. Farook explicitly stipulated to certain facts which were memorialized in the Harbison Admissions order, including: (1) "That the defendant was operating a gold Saturn vehicle on the date of the offense;" (2) "That the vehicle he was driving on the date of the offense was involved in a crash with the motorcycle occupied by Tommy Jones and Suzette Jones, resulting in their deaths;" and (3) "That at the time of the offense the defendant's driver[']s license was in a state of revocation as a result of a 1987 impaired driving revocation." In addition, the trial court engaged in colloquies with Mr. Farook about those concessions and confirmed that the concessions were with his permission, that he was admitting the concessions without the State having to prove those elements beyond a reasonable doubt, and that he was doing so of his own free will. Later in the trial, Mr. Sease also agreed to stipulate to the fact that Mr. Farook's blood and DNA were found on his driver's-side airbag. Finally, Mr. Sease stipulated to the court that Mr. Farook was not at the scene of the crash when police arrived and that he did not return to the scene. And Mr. Farook

consented to the new stipulations when the court conducted another colloquy. Notably, sixteen days separate the first and the last *Harbison* colloquies.

Even assuming arguendo that defense counsel conceded every element via the written stipulations, opening statement, closing argument, and limited *Harbison* inquiries do not establish that Mr. Farook consented to concede proximate cause or ultimate guilt to misdemeanor death by motor vehicle. Nor do those inquiries establish that he understood the consequences of those concessions. Although the record clearly documents that Mr. Farook and his counsel agreed to make certain concessions, they do not rise to the level of stipulating to the elements or to the complete offense of misdemeanor death by motor vehicle. At no point did the trial court engage in a colloquy with Mr. Farook in which he consented to his counsel's concession of guilt to the commission of the complete crime of the misdemeanor death by motor vehicle offense.

* * *

In sum, I would affirm the Court of Appeals' holding that the record was insufficient to conclude that Mr. Sease had consent to concede Mr. Farook's guilt to the offense of misdemeanor death by motor vehicle. And I would further affirm the Court of Appeals' remand of Mr. Farook's ineffective assistance of counsel claim to the trial court for an evidentiary hearing for the purpose of determining whether Mr. Farook knowingly consented in advance to his attorney's admission of guilt.

Justice EARLS joins in this dissenting opinion.